U.S. CLERK'S OFFICE
DISTRICT COURT
SAN JUAN, P.R.

2002 MAR 22 10: 41

RECEIVED AND FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**ROSA M. LUGO-TORRES EL AL**
        **Plaintiffs**

                                        **Civil No. 97-2440 (JAG)**

        **v.**

**WALTER TORRES-MALDONADO**
**ET AL**
        **Defendants**

---

### MAGISTRATE-JUDGE'S REPORT AND RECOMMENDATION

The plaintiffs filed a complaint on September 29, 1997, pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985, alleging violations of their constitutional rights pursuant to the First, Fifth and Fourteenth Amendment of the United States Constitution. Plaintiffs also invoke the court's supplemental jurisdiction for violations of Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §§ 5141, 5142, 29 L.P.R.A. § 146 *et seq.,* and for violations of the Puerto Rico Constitution (**Docket No. 1**). An amended complaint containing the same or similar allegations was filed on October 21, 1997, adding a new plaintiff (**Docket No. 2**).

Plaintiffs, all of whom were employed on a contract basis by the Southwestern Consortium, allege their rights were violated when they were discharged from their employment. More particularly, plaintiffs allege that they were discharged as a result of a change in political parties following the elections held in November, 1996. All the plaintiffs are member of the New Progressive Party (NPP). Several months following the elections their contracts were not renewed and they were replaced by individuals who are members of the Popular Democratic Party (PDP). Defendants





now move for summary judgment which the plaintiffs oppose (**Docket Nos. 37, 48, 57**). The motions were referred to the undersigned for report and recommendation.

## I.    **Facts**

At all times relevant to the complaint plaintiffs, Rosa Ramos-Ruiz ("Ramos"), Lidian Vega-Albino ("Vega"), Miguel Angel Pacheco-Quiñones ("Pacheco"), Rosa M. Lugo-Torres ("Lugo"), Ernesto González-Dávila ("González"), Maria E. Centeno-Aquino ("Centeno") and Felícita I. Martínez ("Martínez") were employed by defendant Consorcio del Suroeste or Southwestern Consortium ("Consortium"). The Consortium is formed pursuant to Puerto Rico law and composed of ten municipalities, including the defendant, Municipality of Peñuelas. *See* 21 P.R. Laws Ann. § 4051(p) (Supp.1998). The Consortium's purpose is to prepare youth and adults facing serious barriers to employment for participation in the labor force by providing job training and other services that will result in increased employment and earnings, increased educational and occupational skills, and decreased welfare dependency (**Docket No. 37**, Ex. I). The funding for the program is provided through the federal Job Training Partnership Act. *See* 29 U.S.C.A. §§ 1501--1792b (1999).

The Consortium consists of a Board of Mayors from the ten represented municipalities (**Docket No. 37**, Ex. I). The Board provides the norms and guidelines under which the consortium is administered. *Id.* Accordingly, as the Mayor of Peñuelas, defendant Walter Torres-Maldonado ("Mayor Torres") is a member of the Board. Defendant José Franqui ("Franqui") was the Executive Director of the Consortium until June 30, 1997 (**Docket No. 37**, Statement of Material Facts No.

4).  Defendant Julia Monagas ("Monagas") is the current Executive Director of the Consortium. The executive director is appointed by the Chairman of the Board and certified by the Board of Mayors (**Docket No. 61**, Ex. 1).  There is a local Consortium office in each of the member municipalities.

Elections were held in November 1996.  The incumbent mayor, a member of the NPP, was defeated by defendant Mayor Torres, who is a member of the PDP. Once Torres was elected Mayor of Peñuelas, defendant Leonard Santos-Rivera ("Santos") was appointed as Coordinator of the Consortium's local office in Peñuelas (**Docket No. 61**, Statement of Uncontested Facts No. 10).  As such, he supervised plaintiffs Lugo, Ramos, Pacheco and Centeno.  *Id.*

Ramos entered into a one-year contract with the Consortium on June 1, 1994, as a program technician (**Docket No. 2**).  Although defendants contend her job performance was evaluated as unsatisfactory for the period of July 1, 1995 to December 31, 1995, the evaluation form clearly states that it was satisfactory (**Docket No. 48**, Ex. T).  She entered into a second contract for a term from July 1, 1996 to December 31, 1996, as an Administration Technician (**Docket No. 37**, Ex. V).  The contract was modified on October 29, 1996, effective October 1, 1996, changing her position to Administrative Assistant, increasing her salary, and extending the contract to June 30, 1997.  *Id.* Her job performance was evaluated by defendant Santos and plaintiff Martínez as unsatisfactory for the period of January 1, 1997, to April 30, 1997 (**Docket No. 48**, Ex. U).  Ramos did not sign the

evaluation. *Id.* Her contract terminated on June 30, 1997, and was not renewed (**Docket No. 2**).

Vega entered into a contract with the Consortium on May 16, 1996, as an Assistant Counselor (**Docket No. 2**). She entered into a second contract for a term from July 1, 1996 to September 30, 1996 (**Docket No. 37**, Ex. VIII). The contract was modified on September 13, 1996, effective September 16, 1996, extending same to December 31, 1996, and increasing her salary. *Id.* The contract was again modified on October 29, 1996, effective October 1, 1996, extending her contract to June 30, 1997 (**Docket No. 48**, Ex. R). She then entered into a one-month contract from July 1, 1997 to July 31, 1997 (**Docket No. 37**, Ex. VIII). Her contract terminated on July 31, 1997, and was not renewed (**Docket No. 2**).

Pacheco began working for Consortium on July 1, 1994, as a handyman (**Docket No. 2**). After one year, his contract was renewed. *Id.* He then entered into a contract for a term from July 1, 1996 to December 31, 1996, as an General Worker (**Docket No. 37**, Ex. II). The contract was modified on October 28, 1996, effective October 1, 1996, changing his position to General Services Assistant, extending the term to June 30, 1997, and increasing his salary. *Id.* His contract terminated on June 30, 1997, and was not renewed (**Docket No. 2**).

Lugo began working for Consortium on February 1, 1995, as an Interviewer (**Docket No. 2**). In July, 1995, her contract was renewed. *Id.* She then entered into another contract for a term from July 1, 1996 to December 31, 1996 (**Docket No. 37**, Ex. VI). The contract was modified on October 29, 1996, effective October 1,

1996, extending the term to June 30, 1997, and increasing her salary. *Id.* Her job performance was evaluated by defendant Santos and plaintiff Martínez as unsatisfactory for the period of January 1, 1997, to April 30, 1997 (**Docket No. 48**, Ex. X). She did not sign the evaluation. *Id.* Her contract terminated on June 30, 1997, and was not renewed (**Docket No. 2**).

González began working for Consortium on July 1, 1994, as a property custodian (**Docket No. 2**). After one year, his contract was renewed. *Id.* He then entered into a contract for a term from July 1, 1996 to December 31, 1996 (**Docket No. 37**, Ex. III). The contract was modified on October 29, 1996, effective October 1, 1996, changing his position to property/warehouse custodian, extending the term to June 30, 1997, and increasing his salary. *Id.* His contract terminated on June 30, 1997, and was not renewed (**Docket No. 2**).

Centeno began working for Consortium on July 1, 1994, as an Evaluation Coordinator (**Docket No. 2**). Her contract was renewed. *Id.* She then entered into a contract for a term from July 1, 1996 to December 31, 1996, as an Assistant Counselor (**Docket No. 37**, Ex. IV). The contract was modified on October 29, 1996, effective October 1, 1996, changing her position to Program Specialist II, extending the term to June 30, 1997, and increasing her salary. *Id.* She was evaluated by Santos and Martínez as non-satisfactory for the period January 1, 1997 to April 30, 1997 (**Docket No. 48**, Ex. H). She did not sign the evaluation. *Id.* Her contract terminated on June 30, 1997, and was not renewed (**Docket No. 2**).

Martínez began working for Consortium on January 1, 1995, as a Promotion Technician (**Docket No. 2**). After six months, her contract was renewed. *Id.* She then entered into a contract for a term from July 1, 1996 to December 31, 1996, as a Personnel Technician (**Docket No. 37**, Ex. VII). The contract was modified on October 29, 1996, effective October 1, 1996, changing her position to Personnel Technician I, extending the term to June 30, 1997, and increasing her salary. *Id.* Her contract was renewed for a term from July 1, 1997, to September 30, 1997. Her contract terminated on September 30, 1997 and was not renewed (**Docket No. 2**).

All the plaintiffs are members of the NPP. The positions in which Plaintiffs were employed were filled by members of the PDP party (**Docket No. 2**; **Docket No. 61**, Santos Dep.).

**II.    Analysis**

Defendant Franqui moves for summary judgment on the basis that: (a) plaintiffs failed to state a cognizable § 1983 claim; (b) plaintiffs failed to establish entitlement to continued employment; (c) there are insufficient allegations to support the existence of a conspiracy pursuant to § 1985(d); and (d) defendants are entitled to qualified immunity (**Docket No. 37**). Defendant Torres, in his individual capacity, joined and adopted the motion of Franqui as did Torres, in his official capacity, and the Municipality of Peñuelas (**Docket Nos. 42, 44**). Defendants Consortium, Monagas and Santos also joined and adopted the motion filed by Franqui (**Docket No. 43**). Additionally, the Consortium, Monagas and Santos filed their own motion

for summary judgment asserting same is proper on the bases that plaintiffs: (a) were illegally hired and as a result they do not have a constitutionally protected interest in continued employment; (b) their contracts elapsed and as a result they do not have a right to reinstatement or back pay; (c) they lack evidence to sustain their allegations of termination in employment for political reasons; and (d) there is an absence of indispensable parties (**Docket No. 48**). Defendants Franqui, Torres and the Municipality of Peñuelas supplemented their motion for summary judgment asserting that plaintiffs have failed to state a § 1983 claim based upon political discrimination (**Docket No. 57**).

Plaintiffs, of course, oppose the motions for summary judgment. They do, however, confess that their conspiracy theory, pursuant to 42 U.S.C. § 1985(3), and claims regarding a violation of their right to due process should be dismissed (**Docket No. 61**, mem. pp.7 and 11). **Therefore, the undersigned recommends that the causes of action brought alleging a conspiracy in violation of 42 U.S.C. § 1985(3) and a violation of the right to due process, pursuant to 42. U.S.C. § 1983 be dismissed.**

> **A.    Standard**.

Summary judgment is granted when, based upon the pleadings, affidavits, and depositions, "there is no genuine issue as to any material fact, and [where] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Gaskell v. Harvard Co-op. Soc'y*, 3 F.3d 495, 497 (1st Cir. 1993). A dispute of fact is only genuine if there is sufficient evidence to permit a reasonable jury to resolve the point

in the nonmoving party's favor. *NASCO, Inc. v. Public Storage, Inc.,* 29 F.3d 28, 32

(1st Cir.1994). While all reasonable inferences must be indulged in favor of the non-

moving party, *Sheehy v. Town of Plymouth,* 191 F.3d 15, 19 (1st Cir. 1999), a fact is

considered material only when it has the "potential to affect the outcome of the suit

under applicable law." *Nereida-González v. Tirado-Delgado,* 990 F.2d 701, 703 (1st

Cir.1993).

### B.  Title 42 U.S.C. § 1983

Plaintiffs bring this civil rights action pursuant to 42 U.S.C. §1983, which

provides in relevant part as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or
> the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured
> in an action at law, suit in equity, or other proper
> proceeding for redress . . .

As is well established, § 1983 creates no independent substantive rights, but

rather provides a cause of action by which individuals may seek money damages for

governmental violations of rights protected by federal law. *See, e.g., Albright v.

Oliver,* 510 U.S. 266, 271 (1994). Therefore, to state a cause of action under 42

U.S.C. § 1983, plaintiffs must allege: (1) that the defendants acted under color of

state law; and, 2) that their actions deprived the plaintiffs of a constitutional right.

*Parratt v. Taylor,* 451 U.S. 527, 535 (1981).

The defendants contend that the complaint fails to plead a cause of action against them as it fails to make specific allegations to support a causal connection between the defendants and the alleged deprivation of civil rights. In addition, defendants contend that plaintiffs have failed to show sufficient personal involvement sufficient to impose liability.

Plaintiffs respond that the allegations in the amended complaint clearly frame a *prima facie* case of political discrimination. Having carefully reviewed the amended complaint, this Magistrate-Judge agrees that the allegations are sufficiently detailed to inform the defendants of the details of the legal action against them. Moreover, the complaint sufficiently alleges personal involvement of the individually named defendants.

As there is no respondeat superior liability under § 1983, liability in damages can only be imposed upon officials who were involved personally in the deprivation of constitutional rights. See *Kostka v. Hogg*, 560 F.2d 37, 40 (1st Cir.1977). Indeed, in actions brought pursuant to 42 U.S.C. §1983, *respondeat superior* cannot serve as a basis to hold supervisors responsible for the misdeeds of their subordinates. *O'Neill v. Baker*, 210 F.3d 41, 47 (1st Cir. 2000). However, a supervisory employee may be found liable if he "possessed either the state of mind for the particular constitutional violation or deliberate indifference, and . . . played a causal role in plaintiff's constitutional deprivation." *Id.* (citing 1 Sheldon H. Nahmod, <u>Civil Rights and Civil Liberties Litigation: The Law of Section 1983</u>, §3:91 at 3-241 (4th ed. 1999)). A superior officer may be found liable under § 1983 on the basis of his own

acts or omissions. *See Bowen v. Manchester*, 966 F.2d 13, 20 (1st Cir.1992); *Manarite v. Springfield*, 957 F.2d 953, 957 (1st Cir. 1992). Accordingly, a supervisor may be held liable for what he does or fails to do if his behavior demonstrates deliberate indifference to conduct that is itself violative of a plaintiff's constitutional rights. *See, e.g., City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Manarite*, 957 F.2d at 957.

To succeed on a supervisory liability claim, a plaintiff not only must show deliberate indifference or its equivalent, but also must affirmatively connect the supervisor's conduct to the subordinate's violative act or omission. *See Bowen*, 966 F.2d at 20; *Pinto v. Nettleship*, 737 F.2d 130, 132 (1st Cir. 1984). This causation requirement can be satisfied even if the supervisor did not participate directly in the conduct that violated a citizen's rights; for example, a sufficient casual nexus may be found if the supervisor knew of, overtly or tacitly approved of, or purposely disregarded the conduct. *See, e.g., Lipsett v. University of Puerto Rico*, 864 F.2d 881, 902-03 (1st Cir.1988). Consequently, deliberate indifference to violations of constitutional rights can forge the necessary linkage between the acts or omissions of supervisory personnel and the misconduct of their subordinates. *See Gaudreault v. Salem*, 923 F.2d 203, 208 (1st Cir.1990).

Here, the complaint clearly alleges that Mayor Torres was responsible for the decision not to renew the employment contracts of the plaintiffs, that Franqui signed letters to all the plaintiffs, save Vega, advising them that their contracts with the Consortium would not be renewed and that Santos delivered the letters to the

plaintiffs which advised them their contracts would not be renewed. The complaint further alleges that Monagas signed a letter to Vega advising her that her employment contract with the Consortium would not be renewed.

Quite simply, the amended complaint sufficiently states a claim pursuant to 42 U.S.C. § 1983 inasmuch as it is alleged the defendants either made a decision not to renew plaintiffs employment or overtly or tacitly approved of same. **Therefore, it is recommended that the motion for summary judgment on the basis that the amended complaint fails to state a cognizable claim  pursuant to 42 U.S.C. § 1983 be denied (Docket No. 37).**

Certain depositional testimony by plaintiffs reveals, however, that not all the defendants were personally involved in all the actions alleged.  Indeed, plaintiffs Martínez and Vega testified that they had no claims against Franqui (**Docket No. 37**, Exs. X, XI).  Additionally, plaintiffs González and Martínez testified that they had no claims against Santos (**Docket No. 37**, Ex. X; **Docket No. 48**, Ex. DD).  Finally, plaintiffs Centeno, Pacheco and González testified that they had no claims against Monagas (**Docket No. 48**, Exs. FF, GG, HH).  **Therefore, it is recommended that the claims of Martínez and Vega brought against Franqui; the claims of González and Martínez against Santos; and, the claims of Centeno, Pacheco and González against Monagas be dismissed (Docket Nos. 37, 48).**

Franqui contends that summary judgment is proper as to the claims brought against him by Centeno, Lugo, Pacheco, Ramos and González, inasmuch as they testified that Franqui had never spoken to them about politics nor was any

conversation had by which one could infer that he knew of the plaintiffs' political affiliation. While this may be the case, it does not escape the fact that Franqui signed the letters to these plaintiffs advising them that their employment contracts would not be renewed, that all the plaintiffs were members of the NPP and that their replacements were all members of PDP. Slim, though it might be, it is sufficient to create a genuine issue of material fact as to the personal involvement of Franqui as to these plaintiffs. **It is therefore recommended that the motion for summary judgment as to the personal involvement of Franqui be denied (Docket No. 37).**

### C.  First Amendment - Political Discrimination

Plaintiffs claim that they were discriminated because of their political beliefs. The First Amendment to the United States Constitution protects both political expression and political association. *Elrod v. Burns*, 427 U.S. 347, 356-57 (1976) (quoting *Buckley v. Valeo*, 424 U.S. 1, 11 (1976)). The right of political association includes the right to associate with the political party of one's choice. *Elrod v. Burns*, 427 U.S. at 357 (quoting *Kusper v. Pontikes*, 414 U.S. 51, 56-57 (1973)). Party affiliation may be an acceptable requirement for some types of government employment, in order to promote the State's vital interest in maintaining governmental effectiveness and efficiency. *Branti v. Finkel*, 445 U.S. 507, 517 (1980). If an employee's political beliefs would interfere with the discharge of his public duties, he may be lawfully removed from his position. *Id.*

The First Amendment protection of government employees in nonpolicymaking or transitory positions "against political affiliation discrimination applies not only to

discharges, but also to significant personnel decisions such as whether to hire or

promote a public employee." *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 98 (1st

Cir. 1997) (other citations omitted). Hence, "a local government's decision whether

to renew the contract of a transitory employee falls under this ambit." *Pagán-Cuebas*

*v. Vera-Monroig*, 91 F.Supp.2d 464, 472-73 (D.P.R. 2000).

Neither plaintiffs nor defendants contend that plaintiffs are policymaking

government employees.   "Non-policymaking government employees who allege

political discrimination have a threshold burden to produce evidence sufficient to

allow a rational jury to find that their political affiliation was a substantial or

motivating factor behind the adverse employment action taken against them."

*Pagán-Cuebas*, 91 F.Supp.2d at 473; *See also Báez-Cruz v. Municipality of Comerío*,

140 F.3d 24, 28 (1st Cir.1998);  *Rodríguez-Ríos v. Cordero*, 138 F.3d 22, 24 (1st

Cir.1998).  To meet their burden, plaintiffs do not need to produce direct evidence

of a politically-based discriminatory animus, inasmuch as a discriminatory animus

may be established with circumstantial evidence alone.   *Pagán-Cuebas*, 91

F.Supp.2d at 474; *see also Acosta-Orozco v. Rodriguez-de Rivera*, 132 F.3d 97, 101-

02 (1st Cir.1997); *Acevedo-Díaz v. Aponte,* 1 F.3d 62, 69 (1st Cir.1993).  A highly

charged political atmosphere whereby one political party takes over power from

another, combined with the fact that the plaintiffs and defendants are of opposing

parties, may be probative of a discriminatory animus. *See Acevedo-Díaz,* 1 F.3d at

69.  Plaintiffs must show, however, that there is a causal connection linking

defendants' conduct to the plaintiff's political beliefs. *See LaRou v. Ridlon,* 98 F.3d

659, 662 ()1st Cir. 1996); *Avilés-Martínez v. Monroig*, 963 F.2d 2, 5 (1st Cir.1992).

Once this burden is met, the defendant government employer must articulate a

nondiscriminatory basis for the adverse employment action and must prove by a

preponderance of the evidence that the employment action would have been taken

without regard to the plaintiff's politics. *See Mount Healthy City Sch. Dist. v. Doyle*,

429 U.S. 274 (1977); *Rodríguez-Ríos*, 138 F.3d at 24; *Acevedo García v. Vera-

Monroig*, 30 F.Supp.2d 141, 153 (D.P.R.1998). "The burden of persuasion is on the

[defendants] to establish a *Mount Healthy* defense.   'Summary judgment [is]

warranted . . . only if defendants' evidentiary proffer compels the finding that

political discrimination did not constitute a 'but for' cause for the [discharge].'"

*Acosta-Orozco v. Rodriguez-de Rivera*, 132 F.3d at 103 (quoting *Jirau-Bernal v. Agrait*,

37 F.3d 1, 4 (1st Cir.1994)).

    In the present case, plaintiffs have adduced evidence that they suffered an

adverse employment action, and their employment ended at the expiration of their

contracts and no new contracts were entered into even though in the past, upon

expiration, new contracts had been entered into for new terms of employment with

increased salaries.   In addition to showing that they have suffered an adverse

employment action, plaintiffs must also show a causal connection between this

action and their political affiliation. *See LaRou*, 98 F.3d at 662.

    In their supplemental motion for summary judgment Franqui, Torres and the

Municipality of Peñuelas contend that plaintiffs have failed to demonstrate a direct

causal link between their political affiliation and their employment termination

**(Docket No. 57)**. Specifically, the point to deposition excerpts indicating that plaintiffs Ramos and Pacheco were offered employment in the Municipality of Peñuelas but chose not to accept same. Plaintiffs Ramos and Pacheco, however, rebut this contention by way of their own statements. Ramos indicated that he was not offered employment while Pacheco indicates she was offered a position, did not reject it, but when she went to sign the employment contract was told that someone else had been hired **(Docket No. 61**, Exs. 5, 6). Clearly, there remains a genuine issue of material fact as to the issue of offer of employment.

More importantly, as noted above, when one political party takes power from another, and that fact is combined with the fact that the plaintiffs and defendants are of opposing parties, same may be probative of a discriminatory animus. *See Acevedo-Díaz*, 1 F.3d at 69. Such a change in power took place in Peñuelas when the incumbent mayor, a member of the NPP, was defeated by Mayor Torres, a member of the PDP. The election was followed by the adverse actions of which Plaintiff complain: they are all members of the NPP and they all were replaced by individuals belonging to the PDP. Additionally, according to Franqui, the Executive Director of the Consortium, an important issue for members of the Board was personal confidence in the individual employed – meaning confidence in the government that the individual is going to implement the public politics of the person to whom they report **(Docket No. 61**, Ex. 2).

Defendants have submitted evaluation forms for Plaintiffs Centeno, Ramos and Lugo which contain unsatisfactory ratings apparently as an attempt to show a

nondiscriminatory reason for the adverse employment action. No explanation was provided regarding how the evaluations fit into the scheme of either entering or nonrenewal of employment contracts. The evaluations, all dated May 28, 1997, were prepared by Santos shortly after he began supervising the plaintiffs in question. As he was a supervisor of the plaintiffs, Santos must have been involved in any decisions regarding their employment. More, he is the individual that delivered the letters advising that employment ended at the termination of the contract. With regard to Franqui and Monagas, there is no dispute that they signed the letters in question. That in and of itself, implicates that they knew of the plans to discharge the plaintiffs. Finally, the depositional testimony indicates that Torres, as mayor and as a member of the Consortium, made decisions not to renew employment contracts. Viewing the facts in the light most favorable to the plaintiffs, as the undersigned must do, there remains several genuine issues of material fact sufficient to defeat a motion for summary judgment.

**Therefore, it is recommended that motion for summary judgment on the issue that the plaintiffs have failed to establish a *primae facie* case for political discrimination be denied (Docket No. 37). It is further recommended that the supplemental motion for summary judgment be denied (Docket No. 57).**

### D. Qualified Immunity

Qualified immunity shields government officers performing discretionary functions from civil damages insofar as their conduct does not violate a clearly established statutory or constitutional right which should have been known. *See*

*Harlow v. Fitzgerald* 457 U.S. 800, 818 (1982); *Ringuette v. City of Fall River*, 146 F.3d 1, 5 (1st Cir.1998). "Qualified immunity seeks to ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability,' by attaching liability only if '[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *United States v. Lanier*, 520 U.S. 259, (1997) (citations omitted); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A § 1983 plaintiff must allege a violation of a clearly established right secured by the Constitution or some other federal law." *Camilo-Robles v. Hoyos*, 151 F.3d 1, 6 (1st Cir. 1998) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 840 n. 5 (1998)). "In the context of political discrimination charges, a defendant enjoys qualified immunity as long as the job in question potentially concerned matters of partisan political interest and involved at least a modicum of policymaking responsibility, access to confidential information, or official communication." *Roldán-Plumey v. Cerezo-Suárez*, 115 F.3d 58, 65 (1st Cir. 1997).

A two-part inquiry is employed. If the first part is not met the analysis halts because "there is qualified immunity." *Aponte-Matos v. Toledo-Davíla*, 135 F.3d 182, 187 (1st Cir. 1998). The first inquiry is whether the constitutional right asserted by plaintiffs was clearly established at the time of the alleged violation. The second, if the right was clearly established, is whether a reasonable officer in the same situation would "have understood that the challenged conduct violated that established right." *Aponte-Matos,,* 135 F.3d at 186 (citations omitted); *see also Harlow v. Fitzgerald,* 457 U.S. 800, 812 (1982). A state actor claiming qualified

immunity must do so either under a theory that the asserted constitutional right was not clearly established or under the theory that his conduct satisfies the test of objective legal reasonableness.  *See Camilo-Robles v. Hoyos*, 151 F.3d 1, 5-6 (1st Cir.1998).

Franqui contends that he believed at all times that his conduct was warranted and that he did not violate any clearly established statutory or constitutional rights of which a reasonable person would have known.  Unfortunately for Franqui at the time of the actions in question, the law was clearly established that public employees are protected from adverse employment actions based upon their political affiliations. *See Roldán-Plumey v.  Cerezo-Suárez*, 115 F.3d 58 (1st Cir. 1997).  Franqui also contends that his actions were done in good faith and no discriminatory animus permeated his judgment as he  complied with his duties as Executive Director of the Consortium.  Even if Franqui was complying with his duties as Executive Director, the contention is insufficient to meet the relevant legal standard in light of the fact that plaintiffs have presented evidence that defendants may have been politically discriminating against them by not renewing their employment contracts. *See Acevedo-García v. Vera-Monroig*, 204 F.3d 1, 11 (1st Cir. 2000).

Indeed, there are factual issues as to the nature of the conduct of Franqui, as well as to his motivations behind his conduct.  *See Acevedo-García v. Vera-Monroig*, 204 F.3d at 8.  Surely Franqui knew that discriminating against plaintiffs in their employment relationship for political differences was clearly in violation of federal law.  Moreover, as plaintiffs are afforded every reasonable inference that can be

adduced from the record, there are factual issues as to the essential elements of plaintiffs' claims. These include the nature of the involvement of Franqui; whether his conduct rises to the level of deliberate, reckless or callous behavior sufficing to § 1983 liability; and the severity of the alleged adverse actions suffered by plaintiffs. *See id.* The undersigned is aware that Franqui's subjective intent is irrelevant to the qualified immunity defense. *See Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). Regardless, after indulging plaintiffs with every reasonable inference discernable from the facts on record, when viewed objectively, those facts permit a finding that Franqui, as a reasonable person, knew or should have known, that his conduct violated clearly established statutory or constitutional rights of the plaintiffs. *See Harlow v. Fitzgerald*, 457 U.S. at 817-818.

Therefore, Franqui is not entitled to qualified immunity simply because he acted in good faith in complying with his duties as Executive Director. **Based on the foregoing, it is recommended that the motion for summary judgement on the basis of qualified immunity be denied (Docket No. 37).**

### E. Illegal Hiring

Defendants Consortium, Monagas and Santos contend that assuming, arguendo, that the plaintiffs' political affiliation was a motivating factor for their termination in employment, plaintiffs cannot prevail because their appointments were illegal and in violation of Puerto Rico law, particularly 21 L.P.R.A. § 4564. Defendants contend that the plaintiffs' appointments violated several provisions of Municipal Law and Personnel Law of Puerto Rico such that the appointment are null

and void and the plaintiffs would have been separated from their position, regardless of their political affiliation.  Plaintiffs respond and argue that the consortiums formed, pursuant to Puerto Rico law are not subject to such statutory provisions with respect to matters pertaining to personnel administration.

The issue raised by Consortium, Monagas and Santos normally goes not to liability but to damages and more it appears to fall under the ambit of after-acquired evidence.  "Evidence that an employee's appointment was a '"nullity"' under Puerto Rico law ab initio does not control a claim alleging a violation of the employee's First Amendment right of political affiliation".  *Acevedo-Díaz v. Aponte*,  1 F.3d at 69 n. 5;  *see Hiraldo-Cancel*, 925 F.2d 10, 13 (1st Cir. 1991) ("'We do not think that a new administration can use the "nullity" of appointments doctrine as a cover for discharges, transfers, and discrimination based solely on political affiliation'") (quoting *Santiago-Negrón v. Castro-Dávila*, 865 F.2d 431, 436-37 (1st Cir.1989)).

As the Supreme Court noted in First Amendment claims brought by public employees, "if plaintiff[s] prevail, evidence that [defendants] discovered facts after the termination that would have led to later termination anyway . . . would be relevant in assessing what remedy is appropriate." *Board of County Comm'rs, Wabaunsee County, Kan. v. Umbeher*, 518 U.S. 668, 685 (1996); see *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92 (1st Cir. 1997).   In a very similar case to the case at bar, the First Circuit noted that it was error to fail to instruct a jury that testimony regarding the irregularities of plaintiffs' appointments was not relevant in determining liability. *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92 (1st Cir. 1997).

The argument that plaintiffs were illegally hired and as a result they had no rights flies in the face of case law.  The issue is not whether they were illegally hired but whether they were victims of political discrimination. **Therefore, it is recommended that the motion for summary judgment on the basis of illegal hirings be denied (Docket No. 48).**

### F.  Indispensable Party

The Consortium, Monagas and Santos move for dismissal on the basis that plaintiffs did not join indispensable parties to the suit.  These defendants contend that because the Consortium consists of ten municipality members, each municipality should be joined as a party defendant.  Plaintiffs respond that pursuant to Puerto Rico law, once an intermunicipal agreement is perfected and the Municipal Assemblies approve it, the consortium emerges and has its own existence, separate from that of the municipalities that compose it, citing to 21 L.P.R.A. § 4051(p).

Pursuant to Fed.R.Civ.P. 19(a) a party is only necessary if:

> (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

The Agreement of the Board of Mayors was made pursuant to Puerto Rico law, particularly Law 81 which encompasses 21 L.P.R.A. § 4051(p) (**Docket No. 61**, Ex. 1).  As noted above, by law the consortium has its own existence.  The Consortium Board is composed of the mayors of the municipalities in the consortium.  Further

the Agreement of the Board of Mayors provides that the municipal jurisdictions, as signatories to the agreement, agree to accept liability for litigation brought against the Consortium (**Docket No. 61**, Ex. 1).

There are no allegations of negligence by the municipalities, other than the municipality of Peñuelas. One can safely assume that the other municipalities in the Consortium are aware of the litigation since it has been ongoing since 1997, yet they have shown no interest in seeking to intervene in the litigation. More, the municipalities can best be described as insurers of the Consortium and clearly at this point in the litigation it is unknown whether Consortium is liable for allegations of plaintiffs. Finally, it is obvious the interests of the municipalities are protected by the Consortium who is mounting a vigorous defense to this lawsuit. Therefore, the undersigned concludes that the individual municipalities, not named as defendants, are not necessary to this action, nor can they be deemed indispensable parties. **It is recommended that the motion for summary judgment on the basis of indispensable parties be denied (Docket No. 48).**

## III.    Conclusion

Based on the foregoing analysis, it is therefore **RECOMMENDED** that the motions for summary judgment (**Docket Nos. 37, 48**) be **GRANTED in part** and **DENIED in part** as follows:

−    That the causes of action brought alleging a violation of 42 U.S.C. § 1985(3) and the right to due process be **DISMISSED**;

−    That the motion for summary judgment on the basis that the amended complaint fails to state a cognizable claim  pursuant to 42 U.S.C. § 1983 be **DENIED**;

—    That the motion for summary judgment as to the claims of Martínez and Vega against Franqui be GRANTED and those claims against Franqui be **DISMISSED**;

—    That the motion for summary judgment as to the claims of González and Martínez against Santos be **GRANTED** and those claims against Santos be **DISMISSED**;

—    That the motion for summary judgment as to the claims of Centeno, Pacheco and González against Monagas be **GRANTED** and those claims against Monagas be **DISMISSED**;

—    That the motion for summary judgment as to the personal involvement of Franqui be **DENIED**;

—    That motion for summary judgment on the issue that the plaintiffs have failed to establish a primae facie case of political discrimination be **DENIED**;

—    That the motion for summary judgment on the basis of qualified immunity be **DENIED**;

—    That the motion for summary judgment on the basis of illegal hirings be **DENIED**;

—    That the motion for summary judgment on the basis of indispensable parties be **DENIED**.

It is further **RECOMENDED** that the Supplemental Motion for Summary Judgment (**Docket No. 57**) be **DENIED**.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 504.3 of the Local Rules of Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within ten (10) days** of notice. Rule 510.1, Local Rules of Court; Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation waives the right to review by the District Court, and waives the right to appeal the District Court's order. *United*

*States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980). The parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit consideration of issues not raised before the Magistrate-Judge. *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

**SO RECOMMENDED.**

At San Juan, Puerto Rico, on this _19_ day of March, 2002.

**AIDA M. DELGADO-COLON**
**U.S. Magistrate-Judge**