IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Rosa M. Lugo Torres, et al.
**Plaintiffs**

CIVIL NO.97-2440 (JAG)

v.

Walter Torres Maldonado, et al.
**Defendants**

---

OPINION AND ORDER

García-Gregory, D.J.

On October 21, 1999, employees of the Southwestern Consortium, Rosa M. Lugo Torres, Rosa Ramos Ruiz, Lidian S. Vega Albino, Miguel A. Pacheco Quiñonez, Maria E. Centeno Aquino, Ernesto Gonzalez Davila, and Felicita Martinez Alicea (collectively "plaintiffs"), brought suit against Walter Torres Maldonado, Mayor of the Municipality of Peñuelas; the Municipality of Peñuelas; Jose Franqui; Southwestern Consortium; Julio Monagas, Executive Director of the Southwestern Consortium Central Office; and Leonardo Santos Rivera, Director of the Peñuelas Office of the Southwestern Consortium (collectivelly "defendants"), alleging political discrimination under 42 U.S.C. § 1983, deprivations of their equal

Civil No. 97-2440 (JAG)                                                    2

protection rights under 42 U.S.C. § 1985, and supplemental state law claims. Defendants moved to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), arguing that the Job Training Partnership Act ("JTPA"), 29 U.S.C. §§1501-1792b, provides an exclusive administrative procedure for discrimination claims under the act, thus, precluding plaintiffs § 1983 claim. For the reasons discussed below, the Court **denies** defendants' motion to dismiss.

## FACTUAL BACKGROUND

Plaintiffs, who are all members of the New Progressive Party ("NPP"), are employees of the Southwestern Consortium ("the Consortium") which is a non-profit partnership comprised of several municipalities including Peñuelas. (Docket No. 2 at 2, 13.) Following the Puerto Rico general elections on November 5, 1996, the Popular Democratic Party ("PDP") candidate Walter Torres Maldonado defeated the NPP mayoral candidate for Peñuelas. (Id. at 12.) Defendants are all members of the PDP. (Id. at 11-14.)

Between June 30 and September 30, 1997, defendants did not renew plaintiffs' contracts with the consortium.[1] (Id. at 3-7.) On

---

[1] Defendants did not renew Rosa Ramos Ruiz, Miguel Angel Pacheco, Rosa M. Lugo Torres, Ernesto Gonzales Davila, and Maria Centeno Aquino's contracts on June 30, 1997. Likewise, they did

Civil No. 97-2440 (JAG)                                                    3

October 21, 1997, plaintiffs brought suit arguing that the defendants' sole purpose in not renewing their contracts was to politically discriminate against them in violation of the JTPA, the First Amendment, and Puerto Rico Law. (Id. at 14.) They further argue, that the defendants conspired to deprive plaintiffs of their equal protection rights, also in violation of the JTPA and the Fourteenth Amendment. (Id.)

On May 28, 2002, defendants moved to dismiss the complaint for lack of subject matter jurisdiction, arguing that the JTPA's administrative procedure provides exclusive remedies for discrimination claims brought under the Act. (Docket No. 133.) Plaintiffs argue that the JTPA's statutory language does not expressly preclude a § 1983 claim, nor does it imply congressional intent to do so. (Docket No. 44.)

## DISCUSSION

A.  <u>Standard of Review of a Rule 12(b)(1) Motion to Dismiss</u>

Pursuant to Fed.R.Civ.P. Rule 12(b)(1) a defendant can assert

---

not renew Felicita Martinez Alicea's contract on September 30, 1997, and Lidian Vega Albino's contract on July 31, 1997.

Civil No. 97-2440 (JAG)                                                    4

that the Court lacks subject matter jurisdiction to entertain an action. When deciding whether to dismiss a complaint for lack of subject matter jurisdiction the Court "may consider whatever evidence has been submitted, such as the depositions and exhibits submitted . . . ." See Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996).

Motions brought under Rule 12(b)(1) and Rule 12(b)(6) are subject to the same standard of review. Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994); see Torres Maysonet v. Drillex, S.E., 229 F.Supp.2d 105, 107 (D.P.R. 2002). Dismissal is proper pursuant to Fed.R.Civ.P. 12(b)(6) for "failure to state a claim only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." Gonzalez-Morales v. Hernandez-Arencibia, 221 F.3d 45, 48 (1st Cir. 2000) (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiffs' favor. See Correa-Martinez, 903 F.2d at 51; Torres Maysonet, 229 F. Supp.2d at 107. The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's

Civil No. 97-2440 (JAG)                                              5

allegations. See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).

When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." McCoy v. Massachusetts Institute of Tech., 950 F.2d 13, 22 (1st Cir. 1991). Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim. Id. at 23 (citing Correa-Martinez, 903 F.2d at 52). Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." See Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988).

When the Court determines that subject matter jurisdiction does not exist, "it must dismiss the case and not make any determination on the merits of the same." Faura Cirino v. U.S., 210 F.Supp.2d 46, 50 (D.P.R. 2002).

B. Section 1983 claim

Congress enacted § 1983 to create a remedy in favor of those who are deprived of the rights, privileges or immunities granted to them by the Constitution or laws of the United States. Blessing v. Freestone, 520 U.S. 329, 340 (1997). To prevail in a § 1983 claim, plaintiffs bear the burden of showing that defendants,

acting under color of state law, deprived them of their federal constitutional rights, privileges, or immunities. See, e.g., Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 32 (1st Cir. 1996). It is well-established that political discrimination restrains freedom of belief and association, core activities protected by the First Amendment. See Elrod v. Burns, 427 U.S. 347, 354 (1976); Padilla-Garcia v. Rodriquez, 212 F.3d 69, 74 (1st Cir. 2000).

The inquiry of whether plaintiff's rights are enforceable under § 1983 centers on congressional intent. Blessing, 520 U.S. at 341. Congress can foreclose a remedy under § 1983 either by forbidding it expressly in the statute itself, or "impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983". Id. (quoting Livadas v. Bradshaw, 512 U.S. 107, 133 (1994). In this context, there is a strong presumption that Congress intended to allow such suits and the burden of establishing the contrary rests on the defendants. Stowell v. Ives, 976 F.2d 65, 70, n.5 (1st Cir. 1992). See Victorian v. Miller, 813 F.2d 718, 721 (5th Cir. 1987).

**Foreclosure of a § 1983 claim in the JTPA.**

The first part of our inquiry is whether Congress foreclosed recourse to § 1983 in the statute itself. Stowell, 976 F.2d at 67.

Civil No. 97-2440 (JAG)                                                7

Section § 1577(a)(2) of the JTPA provides that no individual shall be subjected to discrimination due to his or her political affiliation or belief. This provision, however, does not specify any grievance procedures to be followed nor does it state that administrative remedies must be exhausted prior to filing suit under § 1983.

Defendants contend that because Congress included political discrimination in the JTPA's nondiscrimination provisions, it intended for this type of discrimination to be channeled through the statute's comprehensive remedial scheme. (Docket No. 145 at 2.) They do not, however, explain what is the comprehensive remedial scheme. Defendants do, nonetheless, make reference to several sections of the JTPA in support of their argument.

For example, defendants aver that the JTPA provides an exclusive administrative review procedure for two circumstances: § 1576 claims of applicants who are dissatisfied with the Secretary of Labor's determination not to award financial assistance, and § 1577(a)(2) claims of discrimination. (Docket No. 133 at 4-5.) They argue that § 1576 contains a comprehensive grievance procedure and that several courts have found that it grants the Secretary of Labor primary and exclusive jurisdiction over claims arising

Civil No. 97-2440 (JAG)                                                    8

thereunder. (Docket No. 133 at 13.) See e.g., City of New Orleans v. U.S. Department of Labor, 825 F.Supp. 120 (E.D. La. 1993).

Defendants further claim that § 1554 (a) and (b) provide three types of review mechanisms for claims of political discrimination.[2] They further cite to § 1577 (b) and (c) which give the Secretary of Labor the authority to review compliance and the recipient fails to do so within sixty days, the Secretary may: (a) refer the matter to the Attorney General who may institute a civil action; or (b) take such action as may be provided by law. (Id. at 6-7.)

Upon review of these sections, particularly § 1577, the non-discrimination provision, the Court does not find any particular language that unmistakably shows a Congressional intent to require exhaustion of administrative procedures before bringing a § 1983 claim. See Fraizer v. Farihaven School Committee, 276 F. 3d 52, 62 (1st Cir. 2002)(holding that by adopting a particular phraseology in the Individuals with Disabilities Education Act ("IDEA"), similar to that in the Prison Litigation Reform Act, Congress

---

[2] Section 1554 (a) and (b) establish in relevant part that:(1) all funded employers establish and maintain grievance procedures; (2) except for complaints alleging fraud or criminal activity, complaints shall be made within one year of the alleged occurrence; and (3) each recipient shall continue to operate or establish and maintain a grievance procedure relating to the terms and conditions of employment.

Civil No. 97-2440 (JAG)                                                          9

unmistakably evinced its intent to require exhaustion of the administrative procedures available under IDEA).

As plaintiffs have argued, § 1576 does not refer to discrimination claims nor does it provide procedures for violations of constitutional rights by state actors. This section only deals with the rights of applicants who are dissatisfied with the Secretary of Labors' decision not to award financial assistance. See 29 U.S.C. § 1576(a). (Docket No. 133 at 7.) Moreover, § 1576 expressly states that all disputes arising thereunder, except for those arising under § 1577, which is the nondiscrimination provision, must be adjudicated under the grievance procedures established by the fund recipients. See 29 U.S.C. § 1576(a). Thus, § 1577, read in conjunction with § 1576 supports the conclusion, that § 1983 is available to employees of recipients who believe that their constitutional rights have been violated by a recipient or an officer of the recipient. Moreover, from the language of that section, exhaustion of administrative procedures does not appear to be required prior to the filing of a § 1983 claim. (Docket No. 144 at 7-8.)

The Court agrees with plaintiffs that, § 1578, the judicial review provision, does not preclude a § 1983 claim for

Civil No. 97-2440 (JAG)                                                                 10

discrimination under the First Amendment because that section deals with matters unrelated to discrimination, like for example fiscal control.[3]

With regards to § 1554, plaintiffs contend that it does not expressly preclude a § 1983 claim and that the regulatory scheme is not comprehensive as to foreclose that cause of action. (Docket No. 144 at 6.) In contrast to the other sections discussed, § 1554(c) expressly mentions exhaustion of the recipient's grievance procedure. It states that "upon exhaustion of a recipient's grievance procedure without decision, . . . the Secretary shall investigate the allegation . . . within 120 days after receiving the complaint." 29 U.S.C. § 1554(C). This section, however, does not expressly state whether § 1983 claims are precluded, nor does it state that grievance procedures must be exhausted before going to court.

In sum, defendants have failed to "muster adequate evidence of

---

[3] Section § 1578(a) provides judicial review for matters arising under the following sections of the JTPA: § 1576, relates to the Secretary of Labor's determination to award, or not financial assistance; § 1574 deals with fiscal controls and corrective actions of sanctions imposed; § 1511(4)(C), deals with appeals to the State Governor for approval of service delivery areas; and § 1515(b)(2) which deals with appeals to the Governor for approval of job training plans.

Civil No. 97-2440 (JAG)                                              11

Congress' prohibitory intent". Stowell, 976 F.2d at 70, n.5.

The Court may not lightly infer or conclude that Congress intended to preclude a § 1983 claim as a remedy for the deprivation of a federally secured right. See Smith v. Robinson, 468 U.S. 992, 1012 (1984); Victorian, 813 F.2d at 721. In light of the foregoing, the Court finds that the statute contains no particular phraseology that unmistakably evinces Congressional intent to require exhaustion of local grievance procedures before bringing a claim under § 1983. See Fraizer 276 F.3d at 62.

This conclusion, however, does not end our inquiry. The Court must determine whether Congress impliedly foreclosed recourse to § 1983.

To determine whether Congress implied a private right of action the Court must review the legislative history and other traditional aids of statutory interpretation to determine congressional intent. Middlesex County Sewerage Authority v. National Sea Clammers Ass'n, 453 U.S. 1, 13 (1981)(internal citations omitted); Fraizer, 276 F.3d at 68 (citing Sterling Suffolk Racecourse Ltd. P'ship v. Burrillville Racing Ass'n, 989 F.2d 1266, 1268 (1st Cir. 1993)).

The JTPA's legislative history is silent with regards to

discrimination claims, exhaustion of grievance procedures, or preclusion of a § 1983 claim. See P.L. 97-300. See <u>AFSCME Local 506 v. Private Industry Council</u>, 942 F.2d 376, 381 (6th Cir. 1991)(confirming district court's finding that the JTPA's legislative history does not address whether the statute creates a private right of action.)

Consequently, and in light of the statute's silence, it is helpful to consider how courts have addressed this issue with regards JTPA's predecessor statute the Comprehensive Employment Training Act ("CETA"), 29 U.S.C §§ 201-999. The First Circuit has not answered this question and the Courts that have dealt with the issue under both the JPTA and the CETA have arrived at different conclusions.

For example, in <u>Uniformed Firefighter Ass'n v. City of New York</u>, 676 F.2d 20 (2nd Cir. 1982), the Second Circuit held that CETA precluded a § 1983 claim. Following the Supreme Court's decision in <u>Sea Clammers</u>, the Circuit Court found that, even in light of the statute's savings clause, CETA's comprehensive remedial scheme provided the exclusive remedy. <u>Uniformed Firefighters</u>, 676 F. 2d at 22-23. See also, <u>CETA Workers' Organizing Committee v. City of New York</u>, 617 F.2d 926, 929-34 (2nd

Civil No. 97-2440 (JAG)                                                    13

Cir. 1980)(finding no implied right of action under CETA).

Other circuit courts have interpreted <u>Uniform Firefighters</u> to mean that the statute's savings clause precludes § 1983 actions for purely CETA based claims but not for federal constitutional claims. See <u>Davis v. Mobile Consortium of CETA</u>, 857 F.2d 737, 741 (11th Cir. 1988)(holding that in accordance with the statute's savings clause, §1983 claims were authorized for federal constitutional claims but not for claims purely based on CETA and the regulations promulgated thereunder); <u>Black v. Broward Employment and Training Administration</u>, 846 F.2d 1311, 1312-14 (11th Cir. 1988)("When the action is based upon the federal Constitution or a federal statute other that CETA, . . . , is it plain that there is no exhaustion requirement under [CETA's] administrative scheme). In <u>Black</u>, the Court understood that Congressional intent was clear in that no exhaustion requirement applied to the CETA's administrative remedies. <u>Id.</u> at 1313. See <u>Pasty v. Board of Regents</u>, 457 U.S. 496, 501 (1982)(holding that whether exhaustion is required prior to bringing a § 1983 suit should be answered by reference to congressional intent). See <u>Page v. DeLaune</u>, 837 F.2d 233, 240 (5th Cir. 1988)("<u>Uniformed Firefighters</u>, therefore, stands for the proposition that CETA does not provide the exclusive remedy for

Civil No. 97-2440 (JAG)                                                    14

constitutional violations.") But see Eastern Band of Cherokee Indians v. Donovan, 739 F.2d 153, 158 (4th Cir. 1984)(holding exhaustion was required in a dispute alleging the Secretary of Labor's misconduct under CETA); Blitz v. Donovan, 740 F.2d 1241, 1248 (D.C. Cir. 1984)(finding that constitutional challenges do not exempt a litigant from exhausting available administrative remedies when pursuit of those remedies may avert the need for constitutional adjudication and are necessary to develop a concrete factual context for judicial review).

This District Court addressed the exhaustion requirement issue under the CETA in Colon Collazo v. Cordero Santiago, and held that exhaustion was required despite plaintiffs' procedural due process claims. 698 F.Supp. 30, 33-35 (D.P.R. 1988). The facts of that case, however, differ substantially from the facts of this case. Colón Collazo dealt with audit reports and misuse of funds, in particular, the disallowance of the funds of the Municipality of Orocovis. Furthermore, the complaint's main claim was that the Puerto Rico prime sponsor in charge of the administration of the CETA had not acted according to the time frames established in the act's regulations. In addition, in Colón, the parties had made use of the administrative mechanism available, and, therefore, the

Civil No. 97-2440 (JAG)                                                15

complete exhaustion of administrative remedies was warranted.

Defendants argue, however, that the Court should follow the legal analysis detailed in <u>AFSCME Local 506</u>. (See Docket No. 151.) Applying the rationale of the CETA cases, the Sixth Circuit held in <u>AFSCME Local 506</u>, that there was no implied private right of action under § 1553(b)(3)(B) of the JTPA. 942 F.2d at 381. This section of the Act, however, protected regular employees from being displaced by JTPA participants, thus, the case dealt with a purely JTPA based claim and not a federal constitutional claim.

Following the <u>AFSCME Local 506</u> decision, the District Court of Pennsylvania held in <u>Berry v. Pennsylvania Pressed Metals, Inc.</u>, that according to §1574(g) of the act, the JTPA's administrative procedure provided relief for plaintiff's claims, i.e. his discharge in breach of the JTPA contract. 846 F.Supp. 27, 29-31 (M.D.Penn. 1994). As in the previously discussed case, the case was not a federal constitutional claim.

In <u>Casey v. Central Oregon Inter-Governmental Council</u>, a constitutional rights case, the District Court of Oregon held that according to <u>AFSCME Local 506</u>, there is no private right of action under the JTPA. <u>See</u> <u>Casey</u>, 2000 WL 33201929 *4 (D. Ore. 2000). Furthermore, its held that the CETA, JTPA's predecessor, "did not

Civil No. 97-2440 (JAG)                                                    16

give rise to a § 1983 claim. Id. The Court cited Davis and Uniformed Firefighters to support its conclusion. The Court, nonetheless, dismissed the § 1983 claim on the grounds that plaintiff failed to prove supervisor liability.

In sum, these cases do not unequivocally support that JTPA precludes a civil rights case under § 1983. The defendants have not met their burden of showing that "the remedial devices provided in [JTPA] are sufficiently comprehensive ... to demonstrate congressional intent to preclude the remedy of suits under § 1983. Wright v. City of Roanoke Redevelopment and Housing Authority, 479 U.S. 418, 424 (1987)(quoting Sea Clammers, 453 U.S., at 20.

In light of the foregoing, the Court does not find in the statute's language, the legislative history, or the cases decided under the JTPA and CETA, a unequivocally manifested congressional intent to bar plaintiffs from bringing a § 1983 claim to remedy civil rights violations under the Federal constitution, without first exhausting the statute's apparent administrative procedures.[4]

---

[4] Defendants submitted as evidence of plaintiffs' knowledge of the exhaustion requirement the Southwestern Consortium's Certificate of Non-discrimination, which plaintiffs signed, and claim that these documents prove that plaintiffs were instructed about their right to file an administrative complaint if they were discriminated. (Docket No. 146 at 1-2, Exhibits 6; Docket No. 150, Exhibit 1.) Plaintiffs claim that the Certificate of Non-discrimination does not state that the employees' claim must be handled exclusively through the local grievance procedure and

Civil No. 97-2440 (JAG)                                                     17

## CONCLUSION

For the foregoing reasons, the Court **DENIES** defendants' motion to dismiss.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31st day of March, 2003.

*[signature]*
JAY A. GARCIA GREGORY
United States District Judge

---

that furthermore, defendants have not shown that in fact the Consortium has established such procedures. (Docket No. 147 at 1-2.)

Regardless of the parties' arguments relating to these certificates, the defendants have failed to file an English translation in accordance with Local Rule 108.1, which requires that "all documents not in the English language which are presented to or filed in this Court, whether as evidence or otherwise, shall be accompanied at the time of presentation or filing by an English translation thereof, unless the Court shall otherwise order." Consequently, the Court need not consider these documents in the disposition of this motion.